1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7  ESTATE OF W. SCOTT CREACH, et
   al.,                                      NO:  CV-11-432-RMP
8
                          Plaintiffs,        ORDER ON DEFENDANTS
9                                            SPOKANE COUNTY'S AND
          v.                                 SHERIFF OZZIE KNEZOVICH'S
10                                           MOTION FOR SUMMARY
   SPOKANE COUNTY, et al.,                   JUDGMENT
11
                          Defendants.
12

13         This matter comes before the Court on a motion for summary judgment filed

14  by Defendants Spokane County and Spokane County Sheriff Ozzie Knezovich,

15  ECF No. 111.  The Court heard oral argument on the motion.  Hugh T. Lackie and

16  Heather C. Yakely appeared on behalf of Defendants Spokane County and Sheriff

17  Knezovich.  Richard D. Wall and Simeon J. Osborn appeared on behalf of

18  Plaintiffs.  The Court has reviewed the briefing and the file, and is fully informed.

19  / / /

20  / / /

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S
MOTION FOR SUMMARY JUDGMENT ~ 1

1

BACKGROUND

2        Spokane County Deputy Sheriff Brian Hirzel was on patrol on the night of

3   August 25, 2010, when he conducted a prowl check at a residence on East Fourth

4   Avenue in Spokane Valley, Washington.  After conducting the prowl check,

5   Deputy Hirzel drove to the nearby Plant Farm and backed his unmarked police car

6   into the gravel parking lot.  Deputy Hirzel then began working on a report using

7   his in-vehicle computer.

8        The Plant Farm is a plant nursery and gardening center owned by the Creach

9   family.  Due to the late hour, the Plant Farm was closed for business when Deputy

10  Hirzel pulled into the parking lot.  Wayne Scott Creach and his wife, Imogene

11  Creach, lived in a residence next door to the Plant Farm.

12       Shortly after Deputy Hirzel's arrival on the premises, Mr. Creach became

13  aware of the vehicle parked in the Plant Farm parking lot.  Mr. Creach got out of

14  bed, put on a pair of pants and slippers, and obtained a flashlight and handgun from

15  inside the residence.  Mr. Creach then left the residence and approached Deputy

16  Hirzel's vehicle.  The precise events occurring thereafter are in dispute, but it is

17  uncontroverted that Deputy Hirzel eventually exited his vehicle and fired a single

18  fatal shot into Mr. Creach's chest.[1]  The Spokane County Sheriff's Office

19

20  _____

[1] Deputy Hirzel's description of the shooting incident is set forth in the Court's
Order denying Defendant Hirzel's motion for summary judgment, ECF No. 89.

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S
MOTION FOR SUMMARY JUDGMENT ~ 2

conducted an Internal Affairs investigation in to the shooting and determined that Deputy Hirzel had not violated any departmental policies or procedures in his conduct.

Mr. Creach's estate and family filed suit against Deputy Hirzel, Spokane County, and Spokane County Sheriff Ozzie Knezovich.  Sheriff Knezovich was named in both his individual and official capacities.  Plaintiffs allege causes of action against all defendants for violating Mr. Creach's civil rights under 42 U.S.C. § 1983 and for wrongful death under Washington law.  Plaintiffs additionally assert claims against Spokane County alone for a practice or custom of excessive use of force under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). ECF No. 1.

Deputy Hirzel previously moved for summary judgment on the basis of qualified immunity.  The Court entered an order denying Deputy Hirzel's motion, finding that genuine issues of material fact exist as to the events leading up to the shooting.  ECF No. 89.  Defendants Spokane County and Sheriff Knezovich now move for summary judgment on Plaintiffs' § 1983 claims and on Plaintiffs' claims against Sheriff Knezovich in his individual capacity.[2]

---

[2] Defendants appeared to move for summary judgment on all claims against them, but did not address Plaintiffs' claim for wrongful death under state law.  Therefore the Court will not reach that  claim here.

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S MOTION FOR SUMMARY JUDGMENT ~ 3

ANALYSIS

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The party asserting the existence of a material fact must show "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The mere existence of a scintilla of evidence is insufficient to establish a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this challenge, the burden then shifts to the non-moving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted). The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). In deciding a motion for

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S MOTION FOR SUMMARY JUDGMENT ~ 4

summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631-32.

Defendants contend that Plaintiffs' § 1983 claims against Spokane County and Sheriff Knezovich in his official capacity must fail as a matter of law. Defendants additionally contend that Plaintiffs have not established any claim against Sheriff Knezovich in his individual capacity and that Plaintiffs do not have a federal claim for loss of relationship with their father, Mr. Creach. Each of these issues is examined in turn.

### A. *Monell* liability under § 1983

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Municipalities are included as "persons" to whom § 1983 applies and thus may be held liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, the doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 claims against municipalities. *Pembaur v. City*

*of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell*, 436 U.S. at 691). In other words, municipal liability is not established merely by showing that a municipal employee committed a constitutional tort while acting within the scope of their employment. *See id.* at 478–79. Instead, liability will attach to a municipality only when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. The "official policy" requirement "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original).

Section 1983 liability may attach to a municipality "only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997).

Plaintiffs argue that *Monell* liability may attach to Defendants Spokane County and Sheriff Knezovich on three bases: first, that Spokane County had a policy or custom of allowing its officers to use unmarked patrol vehicles at their discretion and allowing its officers to park on private property without prior notice or approval; second, that Spokane County failed to adequately train and supervise Deputy Hirzel; and third, that Spokane County, through the statements of Sheriff Knezovich, ratified Deputy Hirzel's conduct.[3]  Defendants contend that Plaintiffs' *Monell* claims must fail as a matter of law.

### 1. Policy or custom

Plaintiffs assert that Spokane County had a policy or custom of allowing its officers to use unmarked patrol vehicles at their discretion, and allowing officers to park on private property without seeking approval from the property owner or notifying the property owner of their presence.  Plaintiffs additionally assert that Spokane County had a practice of allowing its officers to work on reports while seated inside their vehicles, although it is not entirely clear if Plaintiffs assert

---

[3]  Plaintiffs assert another basis for *Monell* liability in their Complaint: that Spokane County had a de facto policy of allowing unlawful use of force by its officers.  ECF No. 1, at 14-17, 20-21.  However, Plaintiffs appear to have abandoned this claim at the summary judgment stage, because they have provided no argument or facts supporting this claim.

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S MOTION FOR SUMMARY JUDGMENT ~ 7

liability on this basis.  Plaintiffs introduced the deposition testimony of Sheriff Knezovich establishing that these alleged practices are in fact widespread and accepted within the Spokane County Sheriff's Department.  ECF No. 134-1, at 16, 18-23.

However, Plaintiffs have not introduced any evidence that the existence of these policies caused the alleged constitutional violation.  Plaintiffs have not pointed to any expert testimony asserting the impropriety of such policies and procedures.  Plaintiffs appear to argue that "but for" the  County's policy or practice of allowing its deputies to use unmarked vehicles at their discretion and to park on private property, the outcome of the case would have been different.

This is not sufficient to establish *Monell* liability under the law.   Plaintiffs must show that the policies were the "moving force" behind the constitutional violation.  *See Monell*, 436 U.S. at 694-95.  In other words, Plaintiffs must demonstrate "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Plaintiffs have shown that Spokane County had such policies or customs, but have not produced any evidence to establish that these policies or customs were the cause of Mr. Creach's death.  Plaintiffs have thus failed to raise a genuine issue of material fact under this theory of liability.

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S MOTION FOR SUMMARY JUDGMENT ~ 8

2.  *Failure to train*

A local government may be held liable under § 1983 for inadequate training of its employees.  *City of Canton*, 489 U.S. at 387.  However, providing inadequate training amounts to a "policy or custom" under *Monell* "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Id.* at 388.  "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a [local government] be liable for such a failure under § 1983."  *Id.* at 389.  "A showing of simple or even heightened negligence will not suffice."  *Bd. of Cnty Com'rs*, 520 U.S. at 407.

To establish a claim for failure to train, a plaintiff must show that "(1) he was deprived of a constitutional right, (2) the [local government] had a training policy that 'amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact'; and (3) his constitutional injury would have been avoided had the [local government] properly trained those officers."  *E.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)).

There are two circumstances in which inadequate training may serve as the basis for municipal liability.  *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (discussing *Bd. of Cnty Com'rs*, 520 U.S. at 407-09).  The first circumstance involves a deficient training program "intended to apply over

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S MOTION FOR SUMMARY JUDGMENT ~ 9

time to multiple employees." *Id.* (quoting *Bd. of Cnty. Com'rs*, 520 U.S. at 407). In that instance "deliberate indifference" may be established by showing that policymakers continued to adhere to a training program that failed to prevent repeated constitutional violations. *Bd. of Cnty. Com'rs*, 520 U.S. at 407. Such a pattern also would tend to show that the lack of proper training was the "moving force" behind the plaintiff's injury, "rather than a one-time negligent administration of the [training] program or factors peculiar to the officer involved in a particular incident." *Id.* at 407-08.

A plaintiff may press an inadequate training claim without showing a pattern of constitutional violations under a second circumstance, where the alleged constitutional violation is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long*, 442 F.3d at 1186 (quoting *Bd. of Cnty. Com'rs*, 520 U.S. at 409). "Deliberate indifference" could be found in that circumstance based on the likelihood of a certain situation occurring "and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Id.* at 1186-87. The "high degree of predictability" also could support an inference that the municipality's indifference "led directly to the very consequence that was so predictable." *Bd. of Cnty. Com'rs*, 520 U.S. at 409-10. This "single incident" liability applies only in "a narrow range of circumstances" where the consequences

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S
MOTION FOR SUMMARY JUDGMENT ~ 10

of the municipality's failure to train should have been "patently obvious." *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011).

In *Canton*, the Supreme Court did not foreclose the possibility that a single instance of a constitutional violation, coupled with a showing that a municipality has failed to train its employees to handle recurring situations, could serve as the basis for municipal liability. 489 U.S. at 390 & n.10. The Court presented a hypothetical example of such a scenario, where a city arms its officers with firearms but provides no training whatsoever regarding the constitutional limitations on the use of deadly force. *Id.* at 390 n.10. The need for such training would be "so obvious" that the failure to provide it "could properly be characterized as 'deliberate indifference' to constitutional rights." *Id.*

Plaintiffs' theory in this case focuses on the ambush training that Deputy Hirzel received in July of 2010, weeks before the shooting incident. In this training exercise, the officers were told to sit in their police vehicles and pretend that they were doing paperwork or some other task within the vehicle. The officers then were asked to shoot from inside their vehicles at targets positioned in various locations outside of the vehicle. Towards the end of the training, the officers were "ambushed" by a volunteer who, without warning, approached the officer sitting in his vehicle and fired at the officer with an "airsoft" gun. The officers, who had airsoft guns, were expected to immediately return fire at the volunteer and to exit

the vehicle while continuing to return fire until the threat was fully addressed. ECF No. 134-2, at 10-14; ECF No. 134-3, at 13-15.

Plaintiffs' argument that this training was constitutionally inadequate primarily relies upon opinions offered by Dr. Thomas Streed, Plaintiffs' police practices and procedures expert. ECF No. 123-1. Plaintiffs allege that the vehicle ambush training was inadequate because it did not include any "no shoot" scenarios. ECF No. 134-2, at 13-14. Thus, according to Plaintiffs, the training failed to provide the officers with training to assist them in distinguishing between a non-threatening pedestrian and a threatening individual.

Plaintiffs also allege that the training was inadequate because the officers were not given other, non-deadly options to respond to the ambush threat, such as by driving their vehicle away from the threat. ECF No. 134-2, at 16-17. Plaintiffs finally contend that the ambush training was likely to create an unreasonable fear in the officers of being killed while seated in their patrol vehicles. ECF No. 123-1, at 6-10, 22-26.

Plaintiffs suggest that the jury could infer that the ambush training caused Mr. Creach's death because Deputy Hirzel described the training scenario as "pretty much identical" to the incident involving Mr. Creach. ECF No. 37, at 58-59. Defendants counter that despite Deputy Hirzel's post-incident statements, the incident was not identical to the ambush training, because Mr. Creach did not fire

on Deputy Hirzel, and Deputy Hirzel did not fire from within his vehicle.  ECF No. 157-1, at 4.

Defendants argue that Plaintiffs cannot establish liability for inadequate training because they have focused only upon Deputy Hirzel's conduct and thus have not shown a program-wide inadequacy of training.  Defendants also argue that Plaintiffs' own police practices experts conflict on whether the ambush training was deficient.  While Dr. Streed opined that the training was inadequate, another one of Plaintiffs' experts, D.P. Van Blaricom, testified that he had reviewed the ambush training and had no criticisms of that training.  ECF No. 113-1, at 4-6; ECF No. 123-1.

The Court finds that Plaintiffs have not provided sufficient evidence to raise a genuine issue of material fact as to whether the County's act of providing the ambush training to its officers amounted to "deliberate indifference" towards the rights of persons with whom Spokane County Deputies come into contact.  *See City of Canton*, 489 U.S. at 388-89.  Plaintiffs predicate their claim on only one instance of inadequate training and have not introduced any evidence of the County's continued adherence to a training program despite the program's failure to prevent repeated constitutional violations.  *See Bd. of Cnty. Com'rs*, 520 U.S. at 407.  Nor have Plaintiffs raised a genuine issue of material fact as to whether the consequences of the municipality's alleged failure to train should have been so

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S MOTION FOR SUMMARY JUDGMENT ~ 13

"patently obvious" that a single instance of training could amount to deliberate

indifference.  *See Connick*, 131 S. Ct. at 1361.  One of Plaintiffs' own police

practices experts, D.P. Van Blaricom, found no criticisms of the ambush training

program.  ECF No. 113-1, at 4-6.

At most, Plaintiffs have demonstrated issues of fact regarding whether

Spokane County acted negligently in providing the ambush training as constituted.

This is not sufficient under the law to establish *Monell* liability.  *See Bd. of Cnty*

*Com'rs*, 520 U.S. at 407 ("A showing of simple or even heightened negligence will

not suffice.").  Based on the evidence introduced, no reasonable jury could find

that Spokane County or Sheriff Knezovich made a deliberate choice to disregard

the rights of its citizens by providing the ambush training.

### 3.  Ratification and failure to properly investigate or discipline

A local government may be held liable for an isolated constitutional

violation where a final policymaker "ratifies" a subordinate's actions.  *Christie v.*

*Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*,

485 U.S. 112, 127 (1988)).  To show ratification, a plaintiff must prove that the

final policymaker "approve[d] a subordinate's decision and the basis for it."  *Id.* at

1239.  Thus, "ratification requires both knowledge of the alleged constitutional

violation, and proof that the policymaker specifically approved the subordinate's

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S
MOTION FOR SUMMARY JUDGMENT ~ 14

1    act." *Lytle v. Carl*, 382 F.3d 978, 988 & n.2 (9th Cir. 2004).  "A mere failure to

2    overrule a subordinate's actions, without more, is insufficient to support a § 1983

3    claim."  *Id.* at 987.  Whether a particular official has final policymaking authority

4    is a question of state law.  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)

5    (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Praprotnik*, 485

6    U.S. at 123-24).

7            As proof of ratification, Plaintiffs rely on Sheriff Knezovich's statements

8    that he reviewed the results of the Internal Affairs investigation conducted by the

9    Spokane County Sheriff's Office and approved of the way that the investigation

10   was conducted and the results of the investigation.  ECF No. 134-1, at 10-11.

11   Plaintiffs also rely on Sheriff Knezovich's finding that Deputy Hirzel did not

12   violate any policies or procedures of the Spokane County Sheriff's Office.  Sheriff

13   Knezovich based this finding on the results of the Internal Affairs investigation as

14   well as the other investigations and reviews of the shooting incident carried out by

15   various bodies.  ECF No. 134, at 11.

16           However, as Defendants argue, Sheriff Knezovich did not ratify Deputy

17   Hirzel's allegedly unconstitutional conduct.  Sheriff Knezovich in fact believed

18   that Deputy Hirzel had engaged in no such conduct based on the results of the

19   Internal Affairs investigation.  Therefore it cannot fairly be said that Sheriff

20   Knezovich ratified the conduct that Plaintiffs believe occurred; he ratified only the

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S
MOTION FOR SUMMARY JUDGMENT ~ 15

1    conduct that was found in the Internal Affairs investigation.  *See Lassiter v. City of*

2    *Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009).

3         Plaintiffs alternatively argue that Sheriff Knezovich adopted the methods

4    and conclusions of the Internal Affairs investigation knowing that the investigation

5    was inadequate and seriously flawed.  Plaintiffs identified the following perceived

6    flaws with the investigation: (1) the investigation ignored the significance of the

7    bullet trajectory evidence and failed to provide any opinion on whether the bullet

8    trajectory was consistent with Deputy Hirzel's description of how the shooting

9    unfolded; (2) the investigation noted the availability of bloodstain evidence

10   without providing any real analysis on whether such evidence supported Deputy

11   Hirzel's version of the events; (3) the investigation failed to explain the

12   inconsistency between neighbors' reports that they heard no voices prior to the

13   shot and Deputy Hirzel's account of the numerous commands that he gave Mr.

14   Creach prior to the shooting; and (4) the investigation failed to address numerous

15   internal inconsistencies in Deputy Hirzel's version of the events, including that

16   Deputy Hirzel stated that he was afraid that Mr. Creach meant to kill him but

17   nevertheless twice put himself within Mr. Creach's reach while holding his

18   firearm, that Deputy Hirzel fired only a single shot despite his belief that Mr.

19   Creach presented an imminent threat of serious harm or death, that Deputy Hirzel

20   stated that his voice was only slightly louder than normal even though he feared for

1    his life and was trained to speak in a commanding manner in such circumstances,

2    and that Deputy Hirzel gave conflicting accounts on how he used his baton to

3    strike Mr. Creach.  ECF No. 135, at 5-7; ECF No. 136, at 14-22.

4         Plaintiffs argue that, based on these facts and reasonable inferences drawn

5    from the facts, a reasonable jury could conclude that the Internal Affairs

6    investigation was seriously flawed, that the flaws in the investigation would have

7    been obvious to Sheriff Knezovich, and that Sheriff Knezovich, by accepting the

8    results of the investigation in spite of the obvious flaws, "acquiesced in Deputy

9    Hirzel's unlawful use of excessive force and adopted his conduct as the official

10   policy of the Sheriff's Department."  ECF No. 136, at 22.

11        The Court agrees that Plaintiffs have put forth evidence establishing an issue

12   of fact regarding the adequacy of the Internal Affairs investigation.  However, an

13   improper custom or policy may be inferred from a failure to investigate or

14   discipline municipal employees only where such failures are "persistent" and

15   "widespread."  *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233-34 (9th Cir.

16   2011); *Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005); *Nadell v.

17   Las Vegas Mero. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001), *abrogated on

18   other grounds as recognized in Beck v. City of Upland,* 527 F.3d 853, 862 n. 8 (9th

19   Cir.2008)); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).

20

In arguing for liability in this case, Plaintiffs rely heavily upon *Larez v. City of Los Angeles*, in which the Ninth Circuit held that *Monell* liability could attach where the LAPD's chief of police failed to take any remedial steps after alleged constitutional violations occurred.  946 F.2d 630, 647 (9th Cir. 1991).  In *Larez*, an investigation that had been conducted into the officers' conduct "'contain[ed] holes' and inconsistencies 'that should have been visible to any reasonable police administrator.'"  *Id.*  In addition, plaintiffs provided testimony from an expert that pursuant to his two-year study of LAPD complaints, "it was 'almost impossible for a police officer to suffer discipline as a result of a complaint lodged by a citizen.'"  *Id.*

In this case, Plaintiffs allege that Sheriff Knezovich relied upon one allegedly flawed Internal Affairs investigation in approving Deputy Hirzel's conduct.  Plaintiffs have not introduced evidence sufficient to raise a genuine issue of material fact showing that Spokane County or Sheriff Knezovich had a widespread and persistent practice of engaging in faulty investigations or failing to discipline officers.  *See, e.g.*, *Hunter*, 652 F.3d at 1233-34; *Larez*, 946 F.2d at 647.  Therefore Plaintiffs have not raised a genuine issue of fact as to whether Spokane County had a custom or practice of failing to properly investigate the actions of its deputies or in failing to discipline errant deputies.

1    Plaintiffs also theorize that Sheriff Knezovich ratified Deputy Hirzel's act of

2    striking Mr. Creach with a baton that Deputy Hirzel was holding in one hand while

3    Deputy Hirzel was simultaneously pointing his gun at Mr. Creach in his other

4    hand.  Plaintiffs have introduced evidence that such a tactic is discouraged in

5    police training because of the risk that a "sympathetic response" will occur, where

6    manipulating an object in one hand causes the other hand to constrict, thus causing

7    an accidental discharge.  ECF No. 134-3, at 5-6.  One of Plaintiffs' theories in this

8    case is that Deputy Hirzel accidentally shot Mr. Creach at the same time that he

9    struck Mr. Creach on the knee with his baton.

10    However, Sheriff Knezovich did not ratify the tactic of using a baton held in

11    one hand while holding a firearm in the other hand.  To establish ratification,

12    Plaintiffs must show that Sheriff Knezovich approved of the act.  *See Christie*, 176

13    F.3d at 1239.  When Sheriff Knezovich was asked if he approved of the tactic in

14    question, he did not endorse the tactic and responded "[w]e don't train that."  ECF

15    No. 134-1, at 53.  This statement was corroborated by Spokane County's lead Field

16    Training Officer Justin Elliott, who testified that the tactic is not taught in Spokane

17    County.  ECF No. 134-2, at 28.

18    Plaintiffs have predicated their claim that Sheriff Knezovich ratified the

19    baton tactic on the Sheriff's mere failure to overrule Deputy Hirzel's use of the

20    tactic in this particular instance.  The mere failure to overrule a subordinate's

1    actions is not adequate to establish liability under a theory of ratification.  *See*

2    *Lytle*, 382 F.3d at 987.  To the extent that Plaintiffs are attempting to show that the

3    County approves of this tactic based on a failure to discipline its officers who

4    employ it, they are required to show that such failures to discipline are "persistent"

5    and "widespread."  *See, e.g.*, *Hunter*, 652 F.3d at 1233-34.  Plaintiffs have

6    introduced no such evidence.

7         The Court finds that Plaintiffs have failed to raise a genuine issue of material

8    fact supporting that a county policy or practice was the moving force behind the

9    alleged violation of Mr. Creach's constitutional rights.  Therefore, summary

10   judgment is appropriate on Plaintiffs' § 1983 claims against Spokane County and

11   Sheriff Knezovich acting in his official capacity.

12        **B.  Sheriff Knezovich acting in his individual capacity**

13        A suit against a government officer in his or her official capacity is

14   equivalent to a suit against the government entity itself.  *Larez*, 946 F.2d at 646

15   (citing *McRorie*, 795 F.2d at 783).  Thus the same standards of liability apply as

16   when a *Monell* claim is pressed against the municipality.  *See id* at 646-47.

17   However, a government official may be held liable in an individual capacity where

18   he "set in motion a series of acts by others, or knowingly refused to terminate a

19   series of acts by others, which he knew or reasonably should have known, would

20   cause others to inflict the constitutional injury."  *Id.* at 646.  Liability may further

be imposed upon a supervisory official in his individual capacity for his "own culpable action or inaction in the training, supervision, or control of his subordinates," for his "acquiescence in the constitutional deprivations of which the complaint is made," or for conduct showing a "reckless or callous indifference to the rights of others."  *Id.* (internal quotations and citations omitted).

Defendants assert that Sheriff Knezovich had no individual participation in the alleged constitutional injury.  Plaintiffs failed to respond to the County's motion for summary judgment on this point and have not submitted any evidence showing a genuine issue of material fact as to whether Sheriff Knezovich may be liable in his individual capacity.  Plaintiffs' only claims regarding Sheriff Knezovich relate to his alleged ratification of Deputy Hirzel's actions after the fact, which relate only to Sheriff Knezovich's involvement in his official capacity under *Monell*.  Therefore, summary judgment is appropriate on any claims pressed against Sheriff Knezovich in his individual capacity.

**C. Federal claim for Plaintiffs' loss of relationship with their father**

Defendants argue that Plaintiffs' complaint alleges a federal claim for loss of relationship with their father.  Defendants argue that such a claim may not be made pursuant to § 1983.  *See Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005) (holding that parents of adult son fatally shot by police officer could not recover for loss son's society and companionship under § 1983).

However, it is not clear that Plaintiffs' complaint asserts a federal claim for loss of their relationship with their father under § 1983. In a section of the Complaint titled "Facts Relating to Damages for Federal Claims," Plaintiffs state that Mr. Creach's wife and children "have suffered general damages related to the interference in the husband-wife, parent-child relationship in an amount to be proven at trial." ECF No. 1, at 17. However, when reciting the causes of action in the Complaint, Plaintiffs did not mention loss of relationship for their federal causes and referenced such damages only in relation to their state law claim for wrongful death. ECF No. 1, at 21-22.

Plaintiffs did not address Defendants' argument regarding a federal claim for loss of their relationship at summary judgment and thus appear to agree that their Complaint does not assert a federal cause of action for the Creach children's loss of relationship with their father.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    Accordingly, **IT IS HEREBY ORDERED** that Defendants Spokane

2  County and Ozzie Knezovich's motion for summary judgment on Plaintiffs'

3  *Monell* claims against Spokane County and Sheriff Knezovich in his official

4  capacity, on Plaintiffs' claims against Sheriff Knezovich in his individual capacity,

5  and on any federal claim for the Creach children's loss of relationship with their

6  father, **ECF No. 111**, is **GRANTED.**

7

8    The District Court Clerk is directed to enter this Order and provide copies to

9  counsel.

10    **DATED** this 21st day of June 2013.

11

12                                  *s/ Rosanna Malouf Peterson*
                                  ROSANNA MALOUF PETERSON
13                                  Chief United States District Court Judge

14

15

16

17

18

19

20

ORDER ON DEFENDANTS SPOKANE COUNTY AND OZZIE KNEZOVICH'S
MOTION FOR SUMMARY JUDGMENT ~ 23